ROBERT C. JONES, Appellant, *v.* BOARD OF SUPERVISORS OF THE COUNTY OF ESSEX et al., Respondents.

Third Department, December 5, 1974.

*Favor R. Smith* for appellant.

*Harlan G. Carson* for Board of Supervisors of the County of Essex and another, respondents.

*Louis J. Lefkowitz, Attorney-General (Robert W. Imrie, Ruth Kessler Toch* and *Jack W. Hoffman* of counsel), for State of New York, respondent.

SWEENEY, J. This appeal challenges the constitutional validity of a computerized weighted voting plan which has been adopted by the Board of Supervisors of Essex County and approved by the electorate of that county. Under the plan, each of the Essex County 18 towns elects one supervisor to the board whose voting power on an issue requiring a majority vote ranges from 463 votes allotted to the largest town with a population of 5,839 to 19 votes given to the smallest town of only 212 population. The total maximum deviation in the voting strength or representation afforded to each voter in the

county is 1.993% where a majority vote is required, and 2.723% where a two-thirds vote is required. These deviations are well within the maximum allowed. (*Franklin* v. *Krause*, 32 N Y 2d 234, app. dsmd. 415 U. S. 904.) Expert testimony at Special Term has demonstrated compliance with the formula approved in *Iannucci* v. *Board of Supervisors* (20 N Y 2d 244).

Appellant's chief contention on this appeal is that before a weighted voting plan can be adopted, a good-faith effort must be made to construct districts as nearly of equal population as is practicable, citing *Reynolds* v. *Sims* (377 U. S. 533) and *Mahan* v. *Howell* (410 U. S. 315). With this contention we do not agree. This assertion is not supported by the cases. The general principle of population equality enunciated in *Reynolds* v. *Sims* and reaffirmed in *Mahan* v. *Howell* does not necessarily mandate for the organization of local governments that new districts of equal population be initially created. The good-faith effort which the Constitution requires is to give decisive voting power to all voters regardless of the particular system employed. As the court stated in *Reynolds* v. *Sims*, "Whatever the means of accomplishment, the overriding objective must be substantial equality of population among the various districts, so that the vote of any citizen is approximately equal in weight to that of any other citizen in the State." (377 U. S., at 579.) Justice BRENNAN defines this "constitutional command" in his dissent in *Abate* v. *Mundt* (403 U. S. 182, 188). It is to make "a good-faith effort to achieve absolute equality" of voting power as near "to mathematical exactness as is possible". The one-man one-vote principle as applied to a weighted voting plan for a local level government means that a legislator's voting power, measured by the mathematical possibility of his casting a decisive vote, must approximate the power he would have in a legislative body which did not employ weighted voting. (*Iannucci* v. *Board of Supervisors, supra*, p. 252.) The new Essex County weighted voting plan as adopted by the voters allows for only a small variation from the ideal of allowing absolutely no variation in the voting strength afforded to each voter in the county. It is clear that the deviations are so small as to create substantial equality among Essex County voters.

Appellant's contention that these small deviations were unjustified is also without merit. We have held recently that this State's public policy is to maintain municipal boundary lines in the districting of counties for representation purposes. (*Slater* v. *Board of Supervisors of County of Cortland*, 42 A D 2d 795.) To preserve unit boundary lines and efficiency in the

rendition of local services, a fair measure of "superenfranchisement and disenfranchisement" can be tolerated. (*Franklin* v. *Krause,* 32 N Y 2d 234, 239.) As was recognized by the court in *Reynolds* v. *Sims,* " so long as the divergences from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible ". (377 U. S., at 579.) Maintenance of the integrity of political subdivisions, insofar as possible, is such a legitimate State policy. (*Reynolds* v. *Sims, supra,* p. 579; *Abate* v. *Mundt,* 403 U. S. 182, *supra,* where an apportionment of a county Legislature was upheld in part because New York has a long history of maintaining the integrity of existing local government units within the county.)

The judgment and order should be affirmed.

HERLIHY, P. J., KANE, MAIN and REYNOLDS, JJ., concur.

Judgment and order affirmed, without costs.